DOCKETED
FEB 2 7 2004

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

FEB 2 6 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CACIQUE, INC., AND CACIQUE DISTRIBUTORS, U.S., | |
| Plaintiffs, | |
| v. | Case No. 03 C 4230 |
| V&V SUPREMO FOODS, INC., WILFORD PARKER, and TOWERS PERRIN, | Hon. Judge David H. Coar |
| Defendants. | |

**NOTICE OF FILING**

To:   ALL COUNSEL OF RECORD

PLEASE TAKE NOTICE that on February 26, 2004, there was filed with the United States District Court for the Northern District of Illinois, Eastern Division, the attached **ANSWER TO SECOND AMENDED COMPLAINT**, true and correct copies of which are herewith served upon you.

Respectfully submitted,

TOWERS PERRIN

By: _____
          One of Its Attorneys

Diane M. Kehl
M. Derek Zolner
Vedder, Price, Kaufman & Kammholz
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005

Louise Ann Fernandez
Jeffer, Mangels, Butler & Marmaro, LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Telephone: (310) 203-8080

68

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 26, 2004, a true and correct copy of the enclosed **ANSWER TO SECOND AMENDED COMPLAINT** to be served by U.S. Mail on:

### ALL COUNSEL OF RECORD

M. Derek Zolner

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
FEB 2 6 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CACIQUE, INC., AND CACIQUE
DISTRIBUTORS, U.S.,

        Plaintiffs,

v.

V&V SUPREMO FOODS, INC., WILFORD
PARKER, and TOWERS PERRIN,

        Defendants.

No. 03C 4230

Hon. Judge David H. Coar

**DOCKETED**
FEB 2 7 2004

## ANSWER TO SECOND AMENDED COMPLAINT

For its answer and affirmative defenses to Plaintiff's Second Amended Complaint,

Defendant Towers, Perrin, Forster & Crosby, Inc. ("Towers Perrin") answers as follows:

### Nature of the Case

## ALLEGATION NO. 1:

Cacique and V&V are direct competitors in the sale and marketing of Hispanic-style cheeses. Cacique brings this action to stop misappropriation and inevitable disclosure of Cacique sales and marketing trade secrets resulting from V&V's hiring of Wilford Parker ("Parker"), Cacique's former vice-president of sales and marketing to the post of V&V's vice-president of sales and marketing. In addition, Cacique seeks to stop the continued misappropriation and use of trade secrets by Towers, V&V and Parker.

## ANSWER:

Upon information and belief, Towers Perrin admits that V&V directly competes with at

least one of the Plaintiffs in the sale and marketing of certain Hispanic-style cheeses. As to the

remaining allegations of Paragraph No. 1, Towers Perrin admits that Plaintiffs purport to bring

an action for misappropriation of trade secrets, but Towers Perrin denies that it has

misappropriated any of Plaintiffs' alleged trade secrets or that Plaintiffs are entitled to any relief

against Towers Perrin.

## The Parties

**ALLEGATION NO. 2:**

Cacique, Inc. is a California corporation having its principal place of business in City of Industry, California. Cacique Distributors, U.S. is a California corporation having its principal place of business in La Puente, California. Cacique, Inc. sells all of its products to Cacique Distributors, U.S. which, in turn, markets and sells them throughout the United States. Cacique, Inc. provides marketing support to Cacique Distributors, U.S. Together, the two companies are the largest marketer and seller of Hispanic-style cheese in the United States.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph No. 2 and, therefore, denies those allegations.

**ALLEGATION NO. 3:**

V&V is an Illinois corporation having its principal place of business in Chicago, Illinois. It is one of the largest manufacturers of Hispanic-style cheese in the Midwest.

**ANSWER:**

Upon information and belief, Towers Perrin admits the allegations of Paragraph No. 3.

**ALLEGATION NO. 4:**

Parker is an individual and, upon information and belief, is a citizen of Illinois. He is Cacique's former vice-president of sales and marketing and is currently employed as V&V's vice-president of sales.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph No. 4 and, therefore, denies those allegations.

**ALLEGATION NO. 5:**

Towers is, on information and belief, a Pennsylvania corporation having its principal place of business in Stamford, Connecticut. Towers has an office at 200 West Madison Street, Chicago, Illinois.

**ANSWER:**

Towers Perrin admits the allegations of Paragraph No. 5.

CHICAGO/#1203979.1

## Jurisdiction

**ALLEGATION NO. 6:**

V&V is an Illinois corporation having its principal place of business in Chicago, Illinois.

**ANSWER:**

Upon information and belief, Towers Perrin admits the allegations of Paragraph No. 6.

**ALLEGATION NO. 7:**

Towers is, on information and belief, a Pennsylvania corporation having its principal place of business in Stamford, Connecticut.

**ANSWER:**

Towers Perrin admits the allegations of Paragraph No. 7.

**ALLEGATION NO. 8:**

Parker is, upon information and belief, a resident of this state and judicial district.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 8 and, therefore, denies those allegations.

**ALLEGATION NO. 9:**

The court has personal jurisdiction over the parties.

**ANSWER:**

The allegations of Paragraph No. 9 state a legal conclusion to which no response is required. To the extent a response is required, Towers Perrin does not contest that the Court has personal jurisdiction over it.

**ALLEGATION NO. 10:**

The matter is controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 10.

- 3 -

**ALLEGATION NO. 11:**

The court has diversity subject matter jurisdiction pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the statutory minimum and the matter is between citizens of different states.

**ANSWER:**

The allegations of Paragraph No. 11 state a legal conclusion to which no response is required.  To the extent a response is required, Towers Perrin admits, upon information and belief, that complete diversity exists between the parties, but denies that the amount in controversy exceeds $75,000.

<u>**Venue**</u>

**ALLEGATION NO. 12:**

V&V and Towers have been and are now engaged in business within this state and judicial district.

**ANSWER:**

Towers Perrin admits that it is engaged in business within this state and judicial district. Upon information and belief, Towers Perrin admits the remaining allegations of Paragraph No. 12.

**ALLEGATION NO. 13:**

Parker is, upon information and belief, doing business within this state and judicial district.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 13 and, therefore, denies those allegations.

**ALLEGATION NO. 14:**

Venue is proper in this District pursuant to 28 U.S.C. § 1391.

- 4 -

ANSWER:

The allegations of Paragraph No. 14 state a legal conclusion to which no response is required.  To the extent a response is required, Towers Perrin states that it does not contest venue.

## Causes of Action

### ALLEGATION NO. 15:

V&V is a direct and major competitor of Cacique in the Midwest.  V&V has recently hired Wilford Parker ("Parker"), Cacique's former vice-president in charge of all sales and marketing outside of the state of California, to serve as V&V's vice-president in charge of sales and marketing throughout the United States.

### ANSWER:

Upon information and belief, Towers Perrin admits that V&V is a competitor of at least one of the Plaintiffs in the market for certain Hispanic-style cheeses.  Towers Perrin is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph No. 15 and, therefore, denies those allegations.

### ALLEGATION NO. 16:

As vice-president of sales and marketing at Cacique Distributors, U.S., Parker acquired extensive and intimate knowledge about Cacique's strategic goals and particular plans and processes developed by Cacique over many years of research, trial and error, and at great expense, for marketing, advertising and sales of Hispanic-style cheese in the United States.

### ANSWER:

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 16 and, therefore, denies those allegations.

### ALLEGATION NO. 17:

The goals, plans and processes include, but are not limited to:  multi-year advertising strategies and plans; multi-year marketing strategies and plans; multi-year promotional strategies and plans; proprietary methods for using specific demographic information; and multi-year expansion strategies and plans; as well as the identity of, and specific relationships with, brokers and distributors; customer lists; and pricing information.

- 5 -

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 17 and, therefore, denies those allegations.

**ALLEGATION NO. 18:**

These strategic goals, plans, and processes, as well as the specifics of the customer lists, are unknown to others in the industry, and give Cacique an advantage over its competitors.

**ANSWER:**

Upon information and belief, Towers Perrin states that Plaintiffs share their alleged "strategic goals, plans, and processes" with others in the industry and, therefore, Towers Perrin denies the allegations of Paragraph No. 18.

**ALLEGATION NO. 19:**

As a condition of his employment with Cacique, Parker signed a confidentiality agreement in which he agreed not to make use of or disclose Cacique's confidential information during his employment and after leaving the company.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 19 and, therefore, denies those allegations.

**ALLEGATION NO. 20:**

Parker cannot help but rely on Cacique trade secrets as he helps to plot V&V's course in marketing, advertising, and selling its Hispanic-style cheese in direct competition with Cacique within the United States.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 20 and, therefore, denies those allegations.

**ALLEGATION NO. 21:**

This inevitable reliance on Cacique trade secrets will give V&V a substantial competitive advantage. V&V will know how Cacique intends to price, distribute, and market its Hispanic-style cheese, and will be able to respond strategically. In the words of *Pepsico, Inc. v. Redmond*

*et al.*, 54 F.3d 1262, 1270 (7th Cir. 1995), Cacique "finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game."

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 21 and, therefore, denies those allegations.

**ALLEGATION NO. 22:**

Upon leaving Cacique, Parker told Cacique's president that he had no interest in working for any other manufacturer of Hispanic-style cheeses.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 22 and, therefore, denies those allegations.

**ALLEGATION NO. 23:**

The inconsistency between Parker's representation to Cacique's president and his accepting employment at V&V provides an independent basis for concern that Cacique's trade secrets will be used in the course of Parker's employment at V&V.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph No. 23 and, therefore, denies those allegations.

**ALLEGATION NO. 24:**

V&V engaged Towers as a consultant. In December 2002, Towers delivered a report to V&V advising V&V how to compete against Cacique in the marketplace. The report made several specific recommendations. Certain of these recommendations were expressly based upon confidential Cacique information in Tower's possession. For example, the Towers report cites to Cacique's 2001 Marketing Plan. This Plan is a confidential Cacique document and is a trade secret under law. Towers was not authorized to have a copy of the plan or to use it. Towers did not obtain this information legitimately. That Towers lacked authority to have or disclose Cacique's confidential information was or should have been known to V&V and Parker at the time the disclosure was made or prior to any material change of position in reliance on the misappropriated information.

-7-

**ANSWER:**

Towers Perrin admits that, in 2001, V&V engaged Towers Perrin as a consultant and that, in January 2002, Towers Perrin delivered to V&V a business growth strategy study. Towers Perrin further admits that the report made specific recommendations and that the study twice cites to "Cacique's 2001 Marketing Plan." Towers Perrin denies the remaining allegations of Paragraph No. 24.

**ALLEGATION NO. 25:**

In obtaining and using Cacique confidential information for V&V's benefit, Towers misappropriated Cacique confidential information.

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 25.

**ALLEGATION NO. 26:**

V&V has taken actions based upon the recommendations of Towers and based upon the misappropriated Cacique confidential information and, thus, has misappropriated Cacique's trade secrets.

**ANSWER:**

Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the allegation that "V&V has taken actions based upon the recommendations of Towers" and, therefore, denies this allegation. Towers Perrin denies the remaining allegations of Paragraph No. 26.

**ALLEGATION NO. 27:**

Parker has participated in acting upon the recommendations of Towers and is responsible for implementing V&V's plans to execute Towers' recommendations in the marketplace and, thus, has misappropriated Cacique's trade secrets.

**ANSWER:**

Towers Perrin denies that it has misappropriated Cacique's trade secrets, if any. Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph No. 27 and, therefore, denies those allegations.

**COUNT 1 – ILLINOIS TRADE SECRETS ACT –
INEVITABLE DISCLOSURE (V&V)**

**ALLEGATION NO. 28:**

Cacique incorporates and realleges paragraphs 1-26.

**ANSWER:**

Towers Perrin reincorporates and restates its answers to Paragraph Nos. 1 through 26 as and for its answer to Paragraph No. 28.

**ALLEGATION NO. 29:**

Cacique's strategic goals and the particular plans or processes it developed for marketing, advertising, and selling Hispanic-style cheese throughout the United States are trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets Act, 735 ILCS 1065/2(d) ("the Trade Secrets Act").

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 29 because they, and all allegations of Count I, are not directed against Towers Perrin.

**ALLEGATION NO. 30:**

Because of the economic value of this information to both Cacique and its competitors, Cacique has taken steps to maintain the secrecy of this information, including requiring Parker to sign a confidentiality agreement.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 30 because they, and all allegations of Count I, are not directed against Towers Perrin.

- 9 -

## ALLEGATION NO. 31:

Parker acquired Cacique's trade secrets in confidence, and Cacique has not consented to Parker's use or disclosure of these trade secrets in connection with employment at V&V. Parker is obligated to maintain the secrecy of Cacique's trade secrets, and to not use or disclose them in the discharge of duties at V&V.

## ANSWER:

Towers Perrin makes no answer to the allegations of Paragraph No. 31 because they, and

all allegations of Count I, are not directed against Towers Perrin.

## ALLEGATION NO. 32:

Parker cannot help but rely on Cacique trade secrets as he executes V&V's course in marketing its Hispanic-style cheese in the United States in direct competition with Cacique. In performing those duties, Parker will inevitably be making decisions relying on his knowledge of Cacique's multi-year advertising and promotional plans and other trade secrets.

## ANSWER:

Towers Perrin makes no answer to the allegations of Paragraph No. 32 because they, and

all allegations of Count I, are not directed against Towers Perrin.

## ALLEGATION NO. 33:

V&V's recruiting and hiring of Parker knowing that Parker possesses knowledge of Cacique's trade secrets and has a duty to maintain Cacique's trade secrets in confidence is inducing an inevitable breach of Parker's duty to maintain secrecy. Absent restraint, the inevitable disclosure will constitute a misappropriation within the meaning of section 2(b) of the Trade Secrets Act.

## ANSWER:

Towers Perrin makes no answer to the allegations of Paragraph No. 33 because they, and

all allegations of Count I, are not directed against Towers Perrin.

## ALLEGATION NO. 34:

The inevitable disclosure of Cacique trade secrets may be enjoined pursuant to section 3(a) of the Trade Secrets Act.

CHICAGO/#1203979.1

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 34 because they, and

all allegations of Count I, are not directed against Towers Perrin.

**ALLEGATION NO. 35:**

Unless V&V is enjoined from using Parker to market V&V's Hispanic-style cheese and
from using Cacique's trade secrets, Cacique will suffer competitive losses and will lose the value
of its trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 35 because they, and

all allegations of Count I, are not directed against Towers Perrin.

**ALLEGATION NO. 36:**

Cacique has no adequate remedy at law for this inevitable disclosure or utilization of
Cacique's trade secrets. As between Cacique and V&V, the balance of harms strongly favors
Cacique because, once its trade secrets are disclosed, the competitive injury to Cacique cannot be
undone.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 36 because they, and

all allegations of Count I, are not directed against Towers Perrin.

**ALLEGATION NO. 37:**

The public interest also favors the issuance of an order enjoining V&V from utilizing
Cacique's trade secrets. Consumers benefit from fair competition between Cacique and V&V,
and should not be deprived of fair competition by V&V's unlawful utilization of Cacique's trade
secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 37 because they, and

all allegations of Count I, are not directed against Towers Perrin.

CHICAGO/#1203979.1

## COUNT 2 – ILLINOIS TRADE SECRETS ACT – INEVITABLE DISCLOSURE (PARKER)

**ALLEGATION NO. 38:**

Cacique incorporates and realleges paragraphs 1-26.

**ANSWER:**

Towers Perrin reincorporates and restates its answer to the allegations of Paragraph Nos. 1 through 26 as and for its answer to Paragraph No. 38.

**ALLEGATION NO. 39:**

Cacique's strategic goals and the particular plans or processes it developed for marketing, advertising, and selling Hispanic-style cheese throughout the United States are trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets Act, 735 ILCS 1065/2(d) ("the Trade Secrets Act").

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 39 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 40:**

Because of the economic value of this information to both Cacique and its competitors, Cacique has taken steps to maintain the secrecy of this information, including requiring Parker to sign a confidentiality agreement.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 40 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 41:**

Parker acquired Cacique's trade secrets in confidence, and Cacique has not consented to Parker's use or disclosure of these trade secrets in connection with employment at V&V. Parker is obligated to maintain the secrecy of Cacique's trade secrets, and to not use or disclose them in the discharge of duties at V&V.

- 12 -

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 41 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 42:**

Parker cannot help but rely on Cacique trade secrets as he executes V&V's course in marketing its Hispanic-style cheese in the United States in direct competition with Cacique. In performing those duties, Parker will inevitably be making decisions relying on his knowledge of Cacique's multi-year advertising and promotional plans and other trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 42 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 43:**

The inevitable disclosure of Cacique trade secrets may be enjoined pursuant to section 3(a) of the Trade Secrets Act.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 43 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 44:**

Unless Parker is enjoined from using Cacique's trade secrets to market V&V's Hispanic-style cheese, Cacique will suffer competitive losses and will lose the value of its trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 44 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 45:**

Cacique has no adequate remedy at law for this inevitable disclosure or utilization of Cacique's trade secrets. As between Cacique and Parker, the balance of harms strongly favors Cacique because, once its trade secrets are disclosed, the competitive injury to Cacique cannot be undone.

- 13 -

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 45 because they, and all allegations of Count II, are not directed against Towers Perrin.

**ALLEGATION NO. 46:**

The public interest also favors the issuance of an order enjoining Parker from utilizing Cacique's trade secrets. Consumers benefit from <u>fair</u> competition between Cacique and V&V, and should not be deprived of fair competition by Parker's unlawful utilization of Cacique's trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 46 because they, and all allegations of Count II, are not directed against Towers Perrin.

## COUNT 3 – ILLINOIS TRADE SECRETS ACT – THREATENED MISAPPROPRIATION (V&V)

**ALLEGATION NO. 47:**

Cacique incorporates and realleges paragraphs 1-26.

**ANSWER:**

Towers Perrin restates and reincorporates its answers to Paragraph Nos. 1 through 26 as and for its answer to Paragraph No. 47.

**ALLEGATION NO. 48:**

Cacique's strategic goals and the particular plans or processes developed by Cacique for marketing, advertising, and selling Hispanic-style cheese are trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets Act, 735 ILCS 1065/2(d) ("the Trade Secrets Act").

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 48 because they, and all allegations of Count III, are not directed against Towers Perrin.

- 14 -

**ALLEGATION NO. 49:**

Because of the economic value of this information to both Cacique and its competitors, Cacique has taken steps to maintain the secrecy of this information, including requiring Parker to sign a confidentiality agreement.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 49 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 50:**

Upon information and belief, as a representative of V&V, Parker intends to utilize the confidential trade secret information of Cacique in his efforts to promote and sell V&V's Hispanic-style cheese products.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 50 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 51:**

V&V's recruiting and hiring of Parker to market V&V's Hispanic-style cheese in the United States has resulted in a threatened misappropriation of Cacique's trade secrets. Absent restraint, the threatened misappropriation will result in a violation of section 2(b) of the Trade Secrets Act.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 51 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 52:**

This threatened misappropriation of Cacique's trade secrets may be enjoined pursuant to section 3(a) of the Trade Secrets Act.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 52 because they, and

all allegations of Count III, are not directed against Towers Perrin.

- 15 -

**ALLEGATION NO. 53:**

Unless V&V is enjoined from using Parker to market V&V's Hispanic-style cheese and from using Cacique's trade secrets, Cacique will suffer competitive losses and will lose the value of its trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 53 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 54:**

The threatened misappropriation of Cacique's trade secrets will cause irreparable harm to Cacique for which it has no adequate remedy at law. As between Cacique and V&V, the balance of harms strongly favors Cacique because, once its trade secrets are disclosed or misused, the competitive injury to Cacique cannot be undone.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 54 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 55:**

The public interest favors the issuance of an order enjoining V&V from obtaining or utilizing Cacique's trade secrets. Consumers benefit from fair competition between Cacique and V&V and should not be deprived of that competition by V&V's unlawful utilization of Cacique's trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 55 because they, and

all allegations of Count III, are not directed against Towers Perrin.

**ALLEGATION NO. 56:**

Upon information and belief, V&V's actions in hiring Parker in order to inevitably draw on Cacique's trade secrets was done by V&V intentionally and maliciously, and in part in retaliation for V&V's defeat by Cacique in other litigation.

CHICAGO/#1203979.1

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 56 because they, and all allegations of Count III, are not directed against Towers Perrin.

## COUNT 4 – ILLINOIS TRADE SECRETS ACT – THREATENED MISAPPROPRIATION (PARKER)

**ALLEGATION NO. 57:**

Cacique incorporates and realleges paragraphs 1-26.

**ANSWER:**

Towers Perrin reincorporates and restates its answers to Paragraph Nos. 1 through 26 as and for its answer to Paragraph No. 57.

**ALLEGATION NO. 58:**

Cacique's strategic goals and the particular plans or processes developed by Cacique for marketing, advertising, and selling Hispanic-style cheese are trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets Act, 735 ILCS 1065/2(d) ("the Trade Secrets Act").

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 58 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 59:**

Because of the economic value of this information to both Cacique and its competitors, Cacique has taken steps to maintain the secrecy of this information, including requiring Parker to sign a confidentiality agreement.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 59 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 60:**

Upon information and belief, as a representative of V&V, Parker intends to utilize the confidential trade secret information of Cacique in his efforts to promote and sell V&V's Hispanic-style cheese products.

- 17 -

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 60 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 61:**

The inconsistency between Parker's representation to Cacique's president and his choosing to work for V&V provides an independent basis for finding a threat that Parker will improperly misuse or disclose Cacique's trade secrets in the course of his employment with V&V, resulting in a violation of section 2(b) of the Trade Secrets Act.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 61 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 62:**

This threatened misappropriation of Cacique's trade secrets may be enjoined pursuant to section 3(a) of the Trade Secrets Act.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 62 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 63:**

Unless Parker is enjoined from using Cacique's trade secrets to market V&V's Hispanic-style cheese, Cacique will suffer competitive losses and will lose the value of its trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 63 because they, and all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 64:**

The threatened misappropriation of Cacique's trade secrets will cause irreparable harm to Cacique for which it has no adequate remedy at law. As between Cacique and Parker, the balance of harms strongly favors Cacique because, once its trade secrets are disclosed or misused, the competitive injury to Cacique cannot be undone.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 64 because they, and

all allegations of Count IV, are not directed against Towers Perrin.

**ALLEGATION NO. 65:**

The public interest favors the issuance of an order enjoining Parker from utilizing
Cacique's trade secrets. Consumers benefit from fair competition between Cacique and V&V
and should not be deprived of that competition by Parker's unlawful utilization of Cacique's
trade secrets.

**ANSWER:**

Towers Perrin makes no answer to the allegations of Paragraph No. 65 because they, and

all allegations of Count IV, are not directed against Towers Perrin.

## COUNT 5 – ILLINOIS TRADE SECRET ACT – ACTUAL
## MISAPPROPRIATION (V&V, TOWERS AND PARKER)

**ALLEGATION NO. 66:**

Cacique incorporates and realleges paragraphs 1-26.

**ANSWER:**

Towers Perrin reincorporates and restates its answers to Paragraph Nos. 1 through 26 as

and for its answer to Paragraph No. 66.

**ALLEGATION NO. 67:**

Cacique's strategic goals and the particular plans or processes developed by Cacique for
marketing, advertising, and selling Hispanic-style cheese, as well as internal confidential
information, are trade secrets within the meaning of section 2(d) of the Illinois Trade Secrets
Act, 735 ILCS 1065/2(d) ("the Trade Secrets Act").

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 67.

**ALLEGATION NO. 68:**

Because of the economic value of this information to both Cacique and its competitors,
Cacique has taken steps to maintain the secrecy of this information, including requiring Parker to
sign a confidentiality agreement.

- 19 -

**ANSWER:**

Towers Perrin denies that Cacique has taken steps to maintain the secrecy of this information.  Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph No. 68 and, therefore, denies those allegations.

**ALLEGATION NO. 69:**

Towers, V&V and Parker have utilized, and intend to utilize in the future, the confidential trade secret information of Cacique in their efforts to promote and sell V&V's Hispanic-style cheese products in competition against Cacique.

**ANSWER:**

To the extent the allegations of Paragraph No. 69 are directed against Towers Perrin, Towers Perrin denies those allegations.  To the extent the allegations of Paragraph No. 69 are directed against others, Towers Perrin is without knowledge or information sufficient to form a belief as to the truth of those allegations and, therefore, denies them.

**ALLEGATION NO. 70:**

This actual misappropriation of Cacique's trade secrets may be enjoined pursuant to section 3(a) of the Trade Secrets Act.

**ANSWER:**

The allegations of Paragraph No. 70 state a legal conclusion to which no response is required.  To the extent that a response is required, Towers Perrin states that it has not misappropriated any of Plaintiff's purported trade secrets and Plaintiff's request for injunctive relief against Towers Perrin should be denied.

**ALLEGATION NO. 71:**

Unless Towers, V&V and Parker are enjoined from using Cacique's trade secrets to market V&V's Hispanic-style cheese, Cacique will suffer competitive losses, will lose the value of its trade secrets and V&V will be unjustly enriched.

CHICAGO/#1203979.1

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 71.

**ALLEGATION NO. 72:**

The actual misappropriation of Cacique's trade secrets will cause irreparable harm to Cacique for which it has no adequate remedy at law. As between Cacique and Towers, V&V, and Parker the balance of harms strongly favors Cacique because, once its trade secrets are disclosed or misused, the competitive injury to Cacique cannot be undone.

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 72.

**ALLEGATION NO. 73:**

The public interest favors the issuance of an order enjoining Towers, V&V and Parker from utilizing Cacique's trade secrets. Consumers benefit from fair competition between Cacique and V&V and should not be deprived of that competition by Towers, V&V and Parker's unlawful utilization of Cacique's trade secrets.

**ANSWER:**

Towers Perrin denies the allegations of Paragraph No. 73.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Second Amended Complaint and each count therein fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

The equitable relief sought by Plaintiff is barred by the doctrine of unclean hands.

### Third Affirmative Defense

Plaintiff's claims are barred by the doctrine of laches and/or equitable estoppel.

- 21 -

WHEREFORE, Towers Perrin respectfully requests that Plaintiff's Second Amended Complaint be dismissed with prejudice, for its attorneys' fees pursuant to 765 ILCS 1065/5, and for any other relief the Court deems just and appropriate.

Respectfully submitted,

TOWERS, PERRIN, FORSTER & CROSBY, INC.

By: _Diane M. Kehl_____

One of Its Attorneys

Diane M. Kehl
M. Derek Zolner
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
Telephone: (312) 609-7500
Facsimile:  (312) 609-5005

Louise Ann Fernandez
Jeffer, Mangels, Butler & Marmaro, LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067
Telephone: (310) 203-8080